IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GIESILA C. McGUIRE, and SHARON K. WEES, | CASE NO. 8:05CV498 |
| Plaintiffs, | |
| vs. | MEMORANDUM AND ORDER |
| UNITED AIRLINES, INC., A Delaware Corporation, | |
| Defendant. | |

This matter is before the Court on the Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment. (Filing No. 11). The issues before the Court have been briefed (Filings No. 12, 18, and 22), and the parties have submitted indexes of evidence in support of their respective positions. (Filings No. 13 and 19). For the reasons stated below, the Defendant's Motion will be granted in part and denied in part.

## FACTS

The following facts are undisputed, according to the Defendant's Brief in Support of its Motion (Filing No. 12, pp. 5-13) and the Plaintiffs' Brief in Opposition to the Motion (Filing No. 18, pp.5-7).

The Defendant United Airlines, Inc. ("United"), is a corporation organized under the laws of the state of Delaware; registered in the state of Nebraska; and doing business in Douglas County, Nebraska. United is a common carrier by air within the meaning of Section 181 of the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA").

The International Association of Machinists and Aerospace Workers ("IAM") is an unincorporated association acting as a representative labor organization within the meaning of the RLA, 45 U.S.C. § 151, Sixth. At all times relevant to this action, the IAM

was certified by the National Mediation Board as the representative of the bargaining unit of United's Passenger Service Employees, also known as "Public Contact Employees" or "PCEs." United's PCEs perform duties including customer contact, sales, and reservations. The PCE craft or class includes the job classifications of Customer Service Representative and Ticket Sales Representative. District Lodge 141 has been assigned by the IAM to engage in representation duties such as collective bargaining, enforcement of the PCE Collective Bargaining Agreement ("CBA"), and the handling of grievances. The CBA contains an arbitration provision. Specifically, the CBA establishes a three-step grievance process for resolving disputes over the interpretation of the application of the CBA. If the grievance remains unsettled after the third step, the IAM may request that the case be heard in arbitration by the System Board of Adjustment ("Board"), established by the CBA in compliance with the RLA. The Board is composed of three members: a neutral chairperson mutually selected by United and IAM, a United-appointed member, and an IAM-appointed member. Under the CBA, the Board has the power to make final decisions that bind United, the IAM, and employees, with respect to the meaning and application of the CBA, and with respect to wages, rules or working conditions covered by the CBA.

Plaintiffs Giesela McGuire and Sharon Wees reside in Douglas County, Nebraska, and at all relevant times were employees of United in the PCE craft or class represented by the IAM. Before September of 1996, the Plaintiffs worked as United Customer Service Representatives at Eppley Field Airport in Omaha, Nebraska. In September of 1996, the Plaintiffs began working at United's Omaha City Ticket Office. The Plaintiffs contend that United demoted their employment status without their knowledge or consent to that of Ticket Sales Representatives, then terminated the City Ticket Office in September of 2001, and refused to return the Plaintiffs to their former positions at United's airport location,

despite the Plaintiffs' repeated requests for a reversal of their alleged demotion and a return to Customer Service Representative status.  The Plaintiffs allege that United effectively terminated their employment, and then refused to rehire them at the airport location, instead hiring less qualified persons.  United acknowledges that it furloughed or "laid off" the Plaintiffs upon the closure of the Omaha City Ticket Office in September 2001.

The Plaintiffs and the IAM filed grievances with United, seeking redress for the Plaintiffs' alleged transfer, demotion, and termination.  The grievances were processed under the CBA, and the IAM submitted the grievances to the Board for arbitration.  United and IAM mutually selected Carol Wittenberg to serve as the neutral third-party chairperson of the Board.  IAM selected its Assistant General Chairperson, Richard Delaney, as its appointed member of the Board, and United selected its Director of Labor Relations, Irene Gaughan, as its appointed member of the Board.  On November 12, 2003, the Board heard the grievances, with IAM Assistant General Chairman, Richard Ranson, representing the Plaintiffs and United's Senior Specialist – Labor Relations, Richard Rosinia, representing United.  The Board issued a unanimous "Consent Award," signed by Ransom, Rosinia, the Plaintiffs, and each Board member.  The Consent Award stated in its entirety:

> 1.  Giesila McGuire and Sharon Wees, Grievants, shall have the right to fill the next two part-time vacancies in Omaha, Nebraska for the CSR classification.
> 2.  The filling of this vacancy shall be considered a recall.
> 3.  Ms. McGuire and Ms. Wees shall have the right to fill vacancies in Omaha on the basis of their individual Company seniority.
> 4.  Grievants shall be considered to be on the CSR seniority list only at the point of returning to active service as a CSR.
> 5.  Grievants shall be required to meet all the return to work requirements, including but not limited to medical security requirements.
> 6.  The Union shall withdraw both these two individual grievances and the two related seniority grievances (B90497 and B9098) with prejudice.
> 7.  The System Board of Adjustment shall retain jurisdiction in the event there are any disputes with regard to the interpretation of this Consent Award.

      8. Grievants agree that they have read and approved this Consent Award.

Consent Award (Filing No. 13-5, and Filing No. 19-3 Ex. A).

      According to Ransom, during negotiations for the Consent Award, he raised the question of the Plaintiffs' entitlement to back pay and back benefits for the period they were unemployed; Rosinia rejected any proposal for such back pay and benefits; and Wittenberg foreclosed any further discussion of the subject. (Declaration of Richard R. Ransom, Filing No. 13-2 ("Ransom Decl."), ¶ 3). Based on the record before the Court at this time, it is not clear if the Plaintiffs and/or the other two Board members were present for that discussion. Also according to Ransom, before the Consent Award was signed, he met with the Plaintiffs and explained to them that the Award would not provide for back pay and back benefits for the period of time they were unemployed. (*Id.*). According to McGuire, however, no member of the Board, nor any representative of IAM or United, ever told her that she would be *foreclosed from claiming* entitlement to lost wages, lost pension accruals, appropriate adjustments to ESOP benefits, or lost insurance benefits for the period of time that her employment was terminated. (Affidavit of Giesila C. McGuire, Filing No. 19-3 ("McGuire Aff."), ¶ 18).

      On February 2, 2004, after United recalled the Plaintiffs to work pursuant to the Consent Award, the Plaintiffs filed a new or "renewed" step-one grievance seeking back pay and other benefit adjustments for the time they were furloughed or unemployed. Ransom and Rosinia conferred about the grievance and agreed to request a clarification from Wittenberg pursuant to paragraph 7 of the Consent Award. Later in February 2004, Ransom and Rosinia spoke with Wittenberg by telephone conference call, and requested such a clarification of the Consent Award. On February 27, 2004, Rosinia sent an e-mail to Wittenberg with a copy to Ransom, listing the entitlements that the Plaintiffs were

4

asserting. On March 30, 2004, Wittenberg issued a written "Clarification," stating that the Plaintiffs "are not entitled to any back pay," and "are not entitled to any additional ESOP shares," and denying the "Grievants' requests for additional relief . . . in their entirety." (Filing No. 13-6; Filing No. 19-3 Ex. B). Although the Clarification contained signature lines for the signatures of Delaney and Gaughan, their signatures are not on the document, and it is unclear what effect United gave to the Clarification signed by Wittenberg alone.

The Plaintiffs brought this action on October 31, 2005, seeking an order vacating the "Award," referring to both the original Consent Award and as "adjusted" by Wittenberg on March 30, 2004, alleging that "a. The Arbitrator's decision was arbitrary and capricious; b. The manner in which the proceedings were conducted denied Plaintiffs their due process; and c. The Award was arrived at by fraud and corruption." (Complaint, Filing No. 1, ¶ 22). United moved to dismiss or, in the alternative, for summary judgment.

### STANDARD OF REVIEW

United's Motion to Dismiss or, in the Alternative, for Summary Judgment, is submitted pursuant to Fed. R. Civ. P. 12 (b)(1) (asserting lack of subject matter jurisdiction); 12 (b)(6) (asserting failure to state a claim upon which relief can be granted; and 56 (seeking summary judgment ).

"[A]t issue in a factual 12(b)(1) motion is the trial court's jurisdiction - its very power to hear the case. . . . [T]here is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) *(citations*

*omitted). See also, Faibisch v. University of Minnesota,* 304 F.3d 797, 801 (8th Cir. 2002).

Because all parties have submitted evidence in support of their respective positions, and I have accepted and considered such evidence, United's motion pursuant to Fed. R. Civ. P. 12(b)(6) will be treated as one for summary judgment and disposed of as provided in Rule 56. In the context of a summary judgment motion, the Court's function is to consider the evidence and determine whether the moving party is entitled to judgment as a matter of law. The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56©)). In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.*

## DISCUSSION

<u>Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

United argues that the Plaintiffs' claims are relegated by the RLA to the mandatory and exclusive jurisdiction of the United-IAM arbitration process, and that courts are divested of jurisdiction over such matters in all but the narrowest of circumstances. The Plaintiffs acknowledge that this Court lacks jurisdiction to interpret the Award, but the Plaintiffs allege that they have properly pled an action to vacate the Award under 45 U.S.C.

§ 153 First (q) by alleging that the Award was arbitrary and capricious, denied the Plaintiffs due process, and was arrived at by fraud and corruption.

The 1936 Air Carrier Amendments extended all of the provisions of the RLA to the airlines except 45 U.S.C. § 153.  45 U.S.C. § 181; *Hunt v. Northwest Airlines, Inc.,* 600 F.2d 176, 178 (8th Cir. 1979).  However, the Eighth Circuit Court of Appeals has recognized that "[a]wards of airline system boards of adjustment arise out of the [RLA] and are governed by federal law in the federal courts." *Zeviar v. Local No. 2747, Airline, Aerospace and Allied Employees, IBT*, 733 F.2d 556, 558 (8th Cir. 1984) (citing *International Association of Machinists v. Central Airlines*, 372 U.S. 682, 691-92 (1963)).  Furthermore, the Eighth Circuit has determined that "congressional intent requires identical court treatment of airline board decisions under section 184 and railroad board decisions under section 153." *Id.*

> Section 153 First (q) provides in pertinent part:
>
> If any employee . . . is aggrieved by the failure of any division of the Adjustment Board to make an award in a dispute referred to it, or is aggrieved by any of the terms of an award or by the failure of the division to include certain terms in such award, then such employee . . . may file in any United States district court [having personal jurisdiction over the parties] a petition for review of the division's order. . . . The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct.  On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

"In keeping with federal policy favoring the enforcement of arbitration awards, a Board's decision may be set aside only for (1) failure to comply with RLA requirements, (2) failure to confine itself to matters within its jurisdiction, or (3) fraud or corruption by a Board

member." *Goff v. Dakota, Minnesota & Eastern R.R. Corp.*, 276 F.3d 992, 996 (8th Cir. 2002)(citing 45 U.S.C. § 153 First (q), and *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 93 (1978). "In addition to the statutorily created parameters of review, courts have recognized that railroad arbitration decisions are reviewable for possible due process violations." *Goff*, 276 F.3d at 997.[1]

This Court has subject matter jurisdiction over the Plaintiffs' action as pled, and United's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) will be denied.

*Motion for Summary Judgment*

In support of its motion for summary judgment, United submitted an index of evidence (Filing No 13), that included sworn declarations of Ransom and Rosinia; the Consent Award; the Clarification; and the relevant portions of the CBA, including grievance and System Board hearing procedures. United has met its burden of coming forward with evidence to demonstrate the absence of any genuine issue of material fact with respect to the validity of the Consent Award issued pursuant to the hearing of November 12, 2003. The Plaintiffs have submitted no evidence demonstrating that the Board failed to comply with RLA requirements, failed to confine itself to matters within its jurisdiction, was affected by fraud or corruption in the issuance of the Consent Award, or that the Plaintiffs were denied procedural due process in connection with the issuance of the Consent Award. The

---

[1] United contends that only *railroad* and not *airline* arbitration decisions are reviewable for possible due process violations under the RLA. In *Goff*, however, the Eight Circuit Court cites *Shafii v. PLC British Airways*, 22 F.3d 59 (2d Cir. 1994), in support of the proposition that arbitration decisions are reviewable for possible due process violations to protect "'a plaintiff's legitimate constitutional right to be treated in accord with due process before the Board.'" *Goff*, 276 F.3d at 997, quoting *Shafii*, 22 F.3d at 64. While the court in *Shafii* recognized a split among the circuits on this issue (*id.* at 62-64), it is apparent that the Eighth Circuit Court recognizes the alleged denial of procedural due process as a basis for review of railroad *and* airline arbitration decisions.

Plaintiffs, therefore, have not demonstrated the existence of any genuine issue of material fact with respect to the validity of the Consent Award.

Instead, the Plaintiffs allege that Wittenberg's Clarification of March 30, 2004, violated the Plaintiffs' rights of procedural due process. The Plaintiffs contend that the Consent Award and the Clarification constitute a single "Award," and that the due process defects in the issuance of the Clarification cause both the Clarification and the original Consent Award to be null and void.

The Plaintiffs have demonstrated the existence of genuine issues of material fact with respect to whether Wittenberg's Clarification violated the Plaintiffs' rights of procedural due process. Wittenberg's issuance of the alleged "Clarification" may well violate the CBA Art. XVIII H; the terms of the Consent Award itself; and/or procedural due process. I find no reason to conclude, however, that the Plaintiffs' challenges to Wittenberg's Clarification in any way *invalidate* the original Consent Award.

The Plaintiffs do not deny that they signed and approved the original Consent Award and that it did not provide any compensation to them for lost wages, lost pension accruals, or adjustments to their ESOP and insurance benefits. McGuire asserts, however, that she believed the Consent Award did not preclude her from seeking such compensation at a later date, which she did through a new or "renewed" step-one grievance after her employment was reinstated. (McGuire Aff. ¶¶ 16, 18, 20, 21; Ransom Decl. ¶ 4). While the Consent Award does not provide for back pay or benefits adjustments for the Plaintiffs for the time they were unemployed, neither does it specifically preclude the Plaintiffs from seeking such benefits, other than by reference to the withdrawal of the Plaintiffs' individual grievances and related seniority grievances *with prejudice*. (Consent Award, ¶ 7). Copies

9

of the grievances themselves are not before the Court, and so it is not apparent what complaints are precluded by that language.

In any event, the Consent Award allows the parties to bring disputes with regard to the interpretation of the Consent Award back to the *Board*, which retains jurisdiction. United's contention that the Board members appointed by the parties are merely "theoretical arbitrators" who advocate the position of the party that appointed them and virtually always cast their votes for their own sides, so that the neutral arbitrator ultimately decides the dispute,[2] does not authorize one Board member to issue a written "clarification" of an award without the participation of the other members.

## CONCLUSION

There is no genuine issue of material fact with respect to the validity of the Consent Award issued in November of 2003, and the Defendant is entitled to summary judgment with respect to the Plaintiffs' challenges to the validity of that Award. There remain, however, genuine issues of material fact with respect to the validity of the Clarification to the Consent Award purportedly issued by Board Neutral Arbitrator Carol A. Wittenberg on March 30, 2004, and the Plaintiffs' action will proceed with respect to their challenge to the Clarification.

IT IS ORDERED:

1. The Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (Filing No. 11) is granted in part and denied in part:

    (a). The Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) is denied;

---

[2]Defendant's Rebuttal Brief, Filing No. 22, pp. 11-12, quoting *Brotherhood of Maintenance of Way Employees v. Terminal Railroad*, 307 F.3d 737, 739 (8th Cir. 2002).

(b).  The Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) is treated as one for summary judgment;

(c).  The Defendant's Motion for Summary Judgment is granted with respect to the Plaintiffs' challenge to the Consent Award of November 2003, but denied with respect to the Plaintiffs' challenge to the Clarification of Consent Award of March 30, 2004; and

2. The Defendant United Airlines, Inc., will respond to the Plaintiffs' Complaint, addressing the issues that remain, within ten days of the date of this Memorandum and Order.

Dated this 19th day of April, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge